IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD IKE,<br><br>    Plaintiff,<br><br>    *v.*<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>    Defendant. | CIVIL ACTION<br><br>NO. 23-4498-KSM |

## <u>MEMORANDUM</u>

**Marston, J.**                                                                                                **April 15, 2025**

      Fighting an insurance claim can be a long and frustrating process.  But if a plaintiff wishes to voice his frustration through a lawsuit, his claims must be timely and plausible.  Here, Plaintiff Howard Ike sues Defendant Travelers Property Casualty Company of America ("Travelers") for violating Pennsylvania's bad faith insurance statute and for breaching an insurance contract.  But Ike waited too long to bring his statutory bad faith claim, and his breach of contract claims are barred by accord and satisfaction and fail a matter of law.  So the Court will grant Travelers' motion for judgment on the pleadings, dismiss Ike's claims, and deny his motion to compel as moot.

**I.     Background**

    **A.     Factual Allegations**

      On September 22, 2016, Ike was driving a cargo van for his employer, R.J. Groner Company, Inc.  (Doc. No. 1-3 at 3.)  While driving north on Route 33 near Northampton County, Pennsylvania, Ike's van was rear-ended by another car.  (*Id.*)  The driver of the other car, David

Timberman, told Pennsylvania State Troopers that he slammed on the brakes but could not stop his vehicle from hitting Ike's. (*Id.* at 4.) As a result of the accident, Ike suffered serious and permanent injuries. (*Id.*)

At the time of the crash, Timberman had a personal automobile insurance policy through State Farm Insurance Company ("State Farm"). (*Id.*) This policy provided up to $100,000 in liability coverage. (*Id.* at 5.) Two years after the accident, Ike brought a tort claim against Timberman, seeking recovery for the damages that he had suffered from the accident. (*Id.*) The parties agreed that State Farm would pay Ike $97,000. (*Id.* at 6.) Ike alleges that this amount was insufficient to compensate him for his damages from the accident. (*Id.*)

After his lawsuit against Timberman had settled, Ike sought underinsured motorist ("UIM") benefits through his employer's automobile insurance policy because he was driving his employer's van at the time of the accident. (*Id.* at 6.) His employer had automobile insurance through Travelers, which provided up to $300,000 in UIM coverage. (*Id.*) Ike also sought workers' compensation benefits from his employer because he was on the job when the accident happened. (*Id.* at 5–6.) His employer had a workers' compensation insurance policy through Travelers, too. (*Id.*) So Travelers was involved in *both* his UIM and workers' compensation cases.

*The UIM case.* On November 21, 2019, Ike claimed the full $300,000 policy limit for UIM benefits. (*Id.* at 6.) In his claim, he included his medical records and a statement that showed he had received $52,500 in workers' compensation to pay for his medical treatment from the car accident. (*Id.*) He also attached a vocational earning power assessment, which showed that his earnings had decreased by $300,000 due to a left shoulder injury from the car accident. (*Id.* at 7.)

The next month, Travelers' UIM adjuster confirmed receipt of the claim and requested hardcopies of Ike's current medical records as well as his medical records from the past five years. (*Id.*) Ike provided the adjuster with the requested documents, and she made an offer of $75,000 in February 2020. (*Id.*) In that offer, the adjuster indicated that she needed more information to evaluate Ike's lost wages and asked for a release of his employment records. (*Id.*) Ike executed the additional release, but the adjuster still had difficulty obtaining his employment records. (*Id.*) Ike told her that his employer was also insured by Travelers, so it had a duty to provide those records. (*Id.*) Ike further alleges that as part of the parallel workers' compensation proceedings—also handled by Travelers—Travelers already had all his employment records. (*Id.*)

On April 13, 2020, a new adjuster took over Ike's UIM case. (*Id.*) This adjuster requested authorization to obtain employment records from Ike's post-2016 employers, which Ike promptly provided. (*Id.*) For several months, the UIM case stalled. (*Id.* at 8.) Then, on October 5, 2020, the new adjuster reiterated the same $75,000 offer as the previous one. (*Id.*) Two weeks later, Ike reduced his settlement demand to $275,000 and requested copies of the records that Travelers had obtained, but Travelers failed to produce these records. (*Id.*) Even after Ike reduced his demand, however, the Travelers adjuster indicated that the $75,000 offer would not be increased. (*Id.*) The adjuster also said that Travelers would arbitrate this dispute. (*Id.*) So, the parties went to arbitration. (*Id.*)

During discovery for the arbitration proceeding, Travelers' attorney took Ike's statement, conducted a vocational interview with him, and scheduled his independent medical examination ("IME"). (*Id.* at 9.) The IME occurred on September 29, 2021, and the doctor concluded that Ike did not suffer a shoulder injury from the car accident on September 22, 2016. (*Id.*) Based on

3

this conclusion, Travelers' vocational expert issued a report, finding that Ike did not suffer any lost wages or earnings due to the crash.

The case again stalled, but the parties reopened settlement negotiations in May 2022. (*Id.* at 9–10.) Travelers' attorney extended a $100,000 settlement offer. (*Id.* at 10.) After several back-and-forth discussions, the UIM case was ultimately settled for $187,500 on August 9, 2022. (*Id.*) Ike alleges that he could not wait any longer for the case to conclude because he was in dire financial straits. (*Id.*)

*The workers' compensation case.* While the parties litigated Ike's UIM claim, they continued to litigate his parallel workers' compensation case. On April 5, 2022, Ike filed a petition to review the description of the injury in the workers' compensation case. (*Id.*) The next month, Travelers' counsel for the workers' compensation case mentioned that Travelers had an IME report from several years earlier, which found that the accident had caused a tear in Ike's left shoulder. (*Id.*) Travelers and Ike then entered a stipulation that his injury from the accident included "a tear of the left shoulder and aggravation of a pre-existing left shoulder impingement." (*Id.*) Ike alleges that during the UIM case, Travelers never disclosed that it had an IME report that found Ike had sustained a left-shoulder tear and aggravation of a pre-existing injury from the crash. (*Id.*)

**B. Procedural History**

On October 16, 2023, Ike sued Travelers in Pennsylvania state court, and Travelers removed this case to federal court based on diversity jurisdiction. (Doc. No. 1 at 1.) Ike's Complaint has two counts: Count I is a breach of contract claim; and Count II is a statutory bad faith claim. (*Id.* at 12–17.) In Count I, Ike alleges that Travelers breached the insurance contract by refusing to pay him the full policy limit for UIM benefits. (*Id.* at 12–14.) He also alleges in

Count I that Travelers breached its duty of good faith and fair dealing for, among other things, lowballing him during settlement discussions, failing to properly investigate his UIM claim, and failing to effectuate a prompt and fair settlement of his claim.  (*Id.* at 14–17.)  In Count II, Ike brings a statutory bad faith claim against Travelers under the Pennsylvania bad faith insurance statute, 42. Pa. Cons. Stat. Ann. § 8371.  (*Id.* at 17–20.)

On October 11, 2024, Ike filed a motion to compel, requesting "that Travelers be compelled to produce all information and documentation from both the workers' compensation file and the underinsured motorist file with the exception of any information or documentation protected by the attorney-client privilege."  (Doc. No. 22 at 2.)  In response, Travelers filed a motion for judgment on the pleadings and an opposition to Ike's motion to compel.  (Doc. No. 23-1.)  The parties then filed additional responses and replies to each other's motions.  (Doc. Nos. 24–26.)  The Court held oral argument on April 4, 2025.  (Doc. No. 32.)

**II.    Standard of Review**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)).  A dispute of fact is material if there is sufficient evidence for a reasonable factfinder to find in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[1]

---

[1] Although *Anderson* defined materiality in the context of a motion for summary judgment, courts have applied this definition when reviewing a motion for judgment on the pleadings.  *See, e.g.*, *Burlington Ins. Co. v. Shelter Structures, Inc.*, 484 F. Supp. 3d 237, 240 & n.17 (E.D. Pa. 2020).

When determining whether the moving party is entitled to judgment as a matter of law, the Court must view the facts in the light most favorable to the non-moving party. *Rosenau*, 539 F.3d at 221; *Shelly v. Johns-Manville Corp.*, 798 F.2d 93, 97 n.4 (3d Cir. 1986). "In deciding a motion for judgment on the pleadings, a court may consider 'the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiff's claims are based on the documents, and matters of public record.'" *Burlington Ins. Co.*, 484 F. Supp. 3d at 240 (quoting *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).

## III. Discussion

In his two-count Complaint, Ike sues Travelers for violating the Pennsylvania bad faith insurance statute and for breaching the insurance contract.[2] (Doc. No. 1-3 at 12–20.) Travelers moves for judgment on the pleadings on both claims. First, it argues that Ike's statutory bad faith claim is time-barred. (Doc. No. 23-1 at 15–16.) Travelers then contends that Ike's breach of contract claim is barred by accord and satisfaction because Ike "accepted a settlement payment to resolve his UIM claim." (*Id.* at 9–10.) Ike counters that his claims are timely and that the doctrine of accord and satisfaction does not bar his claim for a breach of the implied duty of good faith and fair dealing. (Doc. No. 24-1 at 14–16.) Because the Court agrees with Travelers, it grants its motion for judgment on the pleadings and denies Ike's motion to compel as moot.

---

[2] Neither party disputes that Pennsylvania law applies here. When a district court sits in diversity, it applies the choice-of-law rules of the state in which the district court sits. *See St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 n. 3 (3d Cir.1991) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). "Under Pennsylvania's choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was contracted and delivered." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 518 (W.D. Pa. 2012).

A.  **Ike's Statutory Bad Faith Claim is Untimely.**

Ike's statutory bad faith claim under 42 Pa. Cons. Stat. Ann. § 8371 is "subject to [a] two-year statute of limitations." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). Both parties agree that a statutory bad faith claim accrues "when the insurer first denies the insured benefits." *Gordon v. LM Gen. Ins. Co.*, No. CV 23-479, 2023 WL 2975869, at *4 (E.D. Pa. Apr. 17, 2023), *aff'd*, No. 23-1887, 2024 WL 4380137 (3d Cir. Oct. 3, 2024). This timing tracks the maxim in Pennsylvania law that "a claim accrues when a plaintiff is harmed and not when the precise amount or extent of damages is determined." *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1042 (Pa. Super. Ct. 1999).

Unsurprisingly, the parties disagree about when the statute of limitations began to run. Travelers argues that Ike's claim accrued when "Travelers gave clear notice to Plaintiff that it refused to pay additional policy benefits, at the latest, by October 21, 2020." (Doc. No. 25 at 9.) Ike counters that his claim did not accrue until his UIM claim "was settled on August 9, 2022." (Doc. No. 24-1 at 19.) The Court finds that Travelers has the stronger argument.

For purposes of the statute of limitations, the Court must decide when Ike was first harmed. Ike alleges that Travelers engaged in various acts of bad faith, such as, failing to fairly and promptly evaluate his UIM claim, making him low offers, failing to pay the full limit of UIM coverage, failing to effectuate a prompt and fair settlement of his claim, and failing to properly resolve his UIM claim. (*See* Doc. No. 1-3 at 18–20.) At bottom, this web of allegations stems from Travelers' failure to promptly pay the full policy limit when Ike initially made his demand for $300,000 in UIM benefits. (*See* Apr. 4, 2025 Hr'g Tr. at 21:21–23 (Ike's counsel agreeing that all the allegations under the statutory bad faith claim stem from Travelers' failure to promptly pay the full policy limit).) So, the key question is: when did Travelers

7

unequivocally refuse to pay the full policy limit?

Travelers points to two different dates that it says provided notice to Ike that it would not pay the full policy amount under the insurance policy. The earlier date is February 6, 2020, which is when Travelers' first UIM insurance adjuster extended an offer of $75,000 to resolve Ike's UIM claim. (Doc. No. 1-3 at 7.) But this date cannot be when the statute of limitations started to run. When the adjuster extended her offer, she "indicated that she did not have enough information to include wage loss in her evaluation" and asked for a release of Ike's employment records. (*Id.*) Given that the adjuster did not include wage loss in her evaluation and asked for more records, it appears that the "parties were still attempting to resolve" the insurance claim. *Clemens v. New York Cent. Mut. Fire Ins. Co.*, No. 3:13-CV-2447, 2014 WL 690823, at *3 (M.D. Pa. Feb. 24, 2014). Thus, the statute of limitations for Ike's statutory bad faith claim did not start running on February 6, 2020, because there were still ongoing negotiations. *See Phan-Kramer v. Am. States Ins. Co.*, No. 2:23-CV-01867-JDW, 2023 WL 4867421, at *3 (E.D. Pa. July 31, 2023) ("A settlement offer is negotiation; a denial letter closes negotiation.").

Travelers' second date fares much better than its first. After the initial offer of $75,000 was made in early February 2020, Ike provided Travelers with his employment records and required authorizations. (Doc. No. 1-3 at 7.) Then, "[o]n October 5, 2020, despite all of the records requested and provided, the [second] adjuster reiterated the same $75,000 offer." (*Id.* at 8.) Two weeks later, on October 21, 2020, this adjuster "indicated that the $75,000 offer *would not be increased* but that Travelers would arbitrate." (*Id.* (emphasis added).) At that time, Ike's statutory claim for bad faith—premised on Travelers' failure to promptly pay the full policy limit—accrued and the statute of limitations began to run because that is when Travelers allegedly committed bad faith by unequivocally refusing to pay the full policy limits. *See*

8

*Loughren v. USAA*, No. GD03-24533, 2005 WL 5006237 (Pa. Com. Pl. June 08, 2005), *aff'd*, 909 A.2d 896 (Pa. Super. Ct. 2006) (finding that the statute of limitations began to run when USAA "refused to pay the policy limits" because plaintiff's bad faith claim was that the insurer refused to pay the policy limits "even though *any* reasonable person" would have paid the policy limits at that time). In short, Ike's statutory bad faith claim accrued on October 21, 2020, and he did not sue until October 16, 2023. (Doc. No. 1-3.) Thus, this statutory bad faith claim is time-barred because it was brought beyond the two-year statute of limitations.

      Ike resists this conclusion on several grounds, but none persuades. *First*, he asserts that his bad faith claim did not accrue until the UIM claim settled. (Doc. No. 24-1 at 18.) Put otherwise, he tries to weave together his statutory bad faith claim and his breach of contract claim and says that the former does not accrue until the latter does. In support of this argument, he cites *Erie Ins. Exch. v. Bristol*, 174 A.3d 578, 589 (Pa. 2017) (emphasis added), which held that "the proper circumstance to start the running of the limitation period [for uninsured motorist claims] is an alleged breach of the insurance *contract*." Yet *Bristol* did not address when a claim under the statutory bad faith statute accrues, nor did it overrule *Ash*'s holding that "an action under § 8371 is a statutorily-created *tort* action." *Ash*, 932 A.2d at 885 (emphasis added). Plus, Ike's attempt to weave together the accrual of statutory bad faith and breach of contract claims has already "been rejected by the Superior Court." *Loughren*, 2005 WL 5006237. In *Adamski*, 738 A.2d at 1039 n.5, the Superior Court observed that "a bad faith action under section 8371 is neither related to nor dependent on the underlying contract claim against the insurer." So, the court reasoned, a plaintiff need not "wait until the merits of the contract claim [are] decided to file suit for bad faith." *Id.* At oral argument, Ike's counsel conceded that Ike could have brought a statutory bad faith claim against Travelers before his UIM claim was settled. (*See* Apr. 4, 2025

9

Hr'g Tr. at 30:3–9.)  Unfortunately, Ike waited to file suit, and by doing so, he missed the deadline to bring this statutory bad faith claim.

This conclusion also tracks the Third Circuit's opinion in *Gordon v. LM Gen. Ins. Co.*, No. 23-1887, 2024 WL 4380137, at *2 (3d Cir. Oct. 3, 2024).  In *Gordon*, the Third Circuit rejected appellants' argument that the statute of limitations on their bad faith claim did not run until payment was made.  *Id.* at *2 n.5.  Appellants tried to distinguish *Adamski* by arguing that the insurer "never denied their claim but simply delayed payment on it."  *Id.*  The Third Circuit disagreed, finding that the insurer did in fact deny their claim.  *Id.*  The Court continued, noting that district court opinions that ruled bad faith claims do not accrue until payment is made "are not persuasively reasoned."  *Id.*  Here, Ike argues that Travelers never denied or disclaimed coverage under the policy but refused to pay the full policy limits in a prompt manner.  (*See* Doc. No. 24-1 at 18 ("The UIM claim was not one where Travelers denied or disclaimed coverage.").)  The Court agrees with the Third Circuit that district court opinions that ruled a statutory bad faith claim does not accrue until payment is made "are not persuasively reasoned" and defy the clear command of *Adamski*.  *Gordon*, 2024 WL 4380137, at *2 n.5.

Ike's argument under the statute of limitations is also inconsistent with his allegations against Travelers.  Ike argues that the statute of limitations did not run until the parties settled the claim in arbitration for less than $300,000.  (Doc. No. 24-1 at 19.)  But his statutory bad faith claim does not and could not simply allege that Travelers breached the contract.  *See Cousart v. State Farm Fire & Cas. Co.*, No. CV 22-4900, 2023 WL 1415594, at *4 (E.D. Pa. Jan. 31, 2023) ("An insured cannot simply plead the same facts to plead a breach of contract and a bad faith claim.  No one offers authority suggesting the General Assembly codified a breach of contract as bad faith in Pennsylvania."); *Ripley v. Brethren Mut. Ins. Co.*, 69 F. Supp. 3d 503, 509 (E.D. Pa.

2014) ("[A]n insured's claim for relief under Section 8371 is independent of the resolution of the underlying contract claim." (internal quotations omitted)). Ike implicitly acknowledges this because he alleges in his Complaint that Travelers acted in bad faith well before his UIM claim was resolved. (*See* Doc. No. 1-3 at 18–20 (alleging that Travelers acted in bad faith by failing to promptly evaluate his UIM claim, lowballing him, and failing to effectuate a prompt and fair settlement).) In other words, Ike's allegations in his Complaint belie his argument that the statutory bad faith claim did not accrue until his UIM claim was resolved.

*Second*, Ike argues that October 21, 2020, could not have been when his statutory bad faith claim accrued because the parties were still engaged in "ongoing negotiations" then. (Doc. No. 24-1 at 18.) In support of this argument, Ike cites to *Clemens*, 2014 WL 690823, at *3, which ruled that plaintiff's statutory bad faith claim did not accrue while the insurer "was sending signals that it was actively considering the claim." But *Clemens* is distinguishable. There, the parties continued to execute authorizations related to plaintiff's UIM claim as late as six weeks before plaintiff filed suit. *Id.* This demonstrated that the insurance provider was still actively considering the insurance claim. *Id.* By contrast, here, Ike provided Travelers' adjuster with all the required authorizations and releases to assess his UIM claim, but he was told that Travelers would not increase its offer of $75,000 in October 2020. (Doc. No. 1-3 at 7–8.) At that time, Travelers gave Ike clear notice that it would not pay additional benefits under the policy. So, his bad faith claim—predicated on Travelers' refusal to promptly pay his full policy benefits—accrued at that time.

*Last*, Ike contends that Travelers' position is "non-sensical" because it ultimately settled the UIM claim for $187,500 on August 9, 2022. (Doc. No. 26 at 8.) Yet this argument again tries to tie the accrual of a statutory bad faith claim with the accrual of a breach of contract claim,

11

which Pennsylvania courts have explicitly cautioned against. *See Adamski*, 738 A.2d at 1039 n.5 (explaining that "a bad faith action under section 8371 is neither related to nor dependent on the underlying contract claim against the insurer," so a plaintiff need not "wait until the merits of the contract claim [are] decided to file suit for bad faith"). And Travelers' later offer to settle the dispute in the context of arbitration "did not indicate that the claims handling was still underway." *Phan-Kramer*, 2023 WL 4867421, at *3. Rather, "it just showed that [Travelers] put a price on avoiding" further spending in arbitration. *Id.*

\* \* \*

In sum, Ike complains that Travelers mishandled his UIM claim because it failed to promptly pay out the full policy limit. Unfortunately, this bad faith claim accrued on October 21, 2020, when Travelers had received all his records and authorizations and still refused to increase its $75,000 valuation of his claim. At that time, the parties were no longer involved in ongoing negotiations during the claims-handling process, Travelers denied him full benefits under the policy, and he suffered the harm that gave rise to this bad faith claim. Because he did not sue within two years of that date, the Court finds that this statutory bad faith claim is time-barred. The Court thus grants Travelers' motion on Count II and dismisses this Count.

But the Court will dismiss Count II without prejudice. To be sure, the Court finds that Ike's statutory bad faith claim based "on the initial refusal to provide the full extent of the coverage" is "barred by the statute of limitation." *Bowers v. Nationwide Ins. Co.*, No. 3:07CV1134, 2008 WL 189572, at *4 (M.D. Pa. Jan. 18, 2008). Yet based on the allegations in the Complaint, Travelers' conduct in the context of arbitration could give rise to "a claim for bad faith unrelated to the initial refusal" that could that survive Travelers' statute of limitation

12

argument.[3]  *Id.*  So Ike will be given leave to amend his complaint and bring a statutory bad faith claim based on Travelers' conduct in the two years before he filed suit.  This statutory bad faith claim cannot rely on Travelers' conduct during the claims-handling process.

> **B.    Ike Cannot Bring a Standalone Claim for a Breach of the Implied Duty of Good Faith and Fair Dealing.**

In its motion, Travelers argues that Ike's breach of contract claim is barred by accord and satisfaction.  (Doc. No. 23-1 at 13–15.)  Ike counters that in his Complaint, he in fact brings two separate breach of contract claims:  (1) for an express breach of the insurance policy and (2) for a breach of the implied duties of good faith and fair dealing (a "common law bad faith" claim).  Both parties agree that the first claim for an express breach of the contract is barred by accord and satisfaction because there was "(1) a disputed debt, (2) a clear and unequivocal offer of payment in full satisfaction, and (3) acceptance and retention of payment by the offeree."  *PNC Bank, Nat. Ass'n v. Balsamo*, 634 A.2d 645, 655 (Pa. Super. Ct. 1993).  (S*ee* Doc. No. 26 at 6.)  The parties dispute only whether Ike can bring the second claim.

Ike argues that "the resolution of the contractual UIM claim does ***not*** affect the presentation of the extra-contractual bad faith claim[ ]."  (Doc. No. 26 at 4.)  He reasons that his common law bad faith claim can still proceed because there was "no claim for common law bad faith damages . . . asserted in the underlying contractual underinsured motorist claim."  (*Id.* at 5–6.)  Yet he cites no cases where a court has allowed a plaintiff to bring a standalone claim for common law bad faith when the underlying contractual claim has been settled.  Travelers makes this point and further argues that Ike could not bring a standalone common law bad faith claim

---

[3] The Court expresses no opinion as to whether Travelers' conduct in the context of arbitration does in fact give rise to a statutory bad faith claim.  Instead, the Court simply grants Ike leave to replead this claim because it could survive Travelers' statute of limitation argument.  If Plaintiff chooses to file an Amended Complaint, Travelers will be permitted to move to dismiss this claim if it believes the claim is still deficient.

13

because it is subsumed by his breach of contract claim, which has been settled. (Doc. No. 25 at 4–5.) The Court agrees with Travelers.

Despite his best efforts, Ike cannot sever his common law bad faith claim from his barred express breach of contract claim. "[A]n action for breach of the implied covenant of good faith and fair dealing 'must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself.'" *Gordon*, 2024 WL 4380137 at *3 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 352 (3d Cir. 2016)). Thus, "a breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim." *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (internal quotations omitted). Here, Ike brought an express breach of contract claim in addition to his common law bad faith claim. Ike now concedes that his claim for an express breach of the contract has been settled. (Doc. No. 24-1 at 13.) Yet he argues that this has no effect on his ability to bring a common law bad faith claim and says he can bring a standalone common law bad faith claim. (Doc. No. 26 at 6.)

The Court disagrees. "The weight of authority indicates that the implied covenant of good faith and fair dealing inherent in every contract does not give rise to an independent cause of action where a breach of contract count has been lodged." *Koerner v. Geico Casualty Co.*, No. 3:17-CV-455, 2017 WL 2588598, at *4 (M.D. Pa. June 14, 2017); *see, e.g.*, *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013) ("Lower federal and state courts have ruled that because the common law claim sounds in contract, it cannot be brought independently from a breach of contract claim. . . . Rather it is subsumed by the breach of contract claim."); *Atain Ins. Co. v. Basement Waterproofing Specialists, Inc.*, No. CV 20-5440-KSM, 2021 WL 5139903, at *8 n.4 (E.D. Pa. Nov. 3, 2021) ("Under Pennsylvania law, breach of the implied covenant of good faith and fair dealing is not an independent cause of action from

14

breach of contract."); *335 Righters Ferry Rd., LP v. Minno & Wasko Architects & Planners, PC*, No. 23-CV-1963, 2024 WL 4656212, at *3 (E.D. Pa. Nov. 1, 2024) (dismissing a common law bad faith claim because "under Pennsylvania law, this covenant does not form the basis of a standalone claim"); *Maronda Homes, LLC v. Motorists Mut. Ins. Co.*, No. 2:20-CV-01526-CCW, 2021 WL 1518009, at *5 (W.D. Pa. Apr. 16, 2021) (explaining that a claim for breach of the implied covenant of good faith and fair dealing "separate and distinct from a breach of contract claim" cannot be maintained because "the covenant does nothing more than imply certain obligations into the contract itself"); *Davis*, 824 F.3d at 352 (ruling that a plaintiff "cannot maintain an independent cause of action for breach of the covenant of good faith and fair dealing under Pennsylvania law"); *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 472 (E.D. Pa. 2011) (finding that Pennsylvania does not allow an independent cause of action for a breach of the implied duty to act in good faith and dismissing this count); *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008) ("A party is generally precluded from maintaining a claim for the breach of the implied duty of good faith and fair dealing separate and distinct from the underlying breach of contract claim."); *Commonwealth v. BASF Corp.,* No. 3127, 2001 WL 1807788, at *12 (Pa. Com. Pl. Mar. 15, 2001) ("Pennsylvania law does not allow for a separate cause of action for breach of either an express or implied duty of good faith, absent a breach of the underlying contract.").  So Ike's common law bad faith claim fails because it is subsumed by his express breach of contract claim, which is barred by accord and satisfaction.

The Court finds *JHE, Inc. v. SEPTA*, No. 1790, 2002 WL 1018941 (Phila. C.P. May 17, 2002) especially insightful on this issue.  In a well-reasoned opinion, the court answered the following question:  "[I]s the covenant of good faith a principle of contract interpretation,

making a breach of the covenant nothing more than a facet of a breach of contract claim, or does a breach of the covenant of good faith give rise to a separate cause of action that may and must be pled separately?" *Id.* at *5. After evaluating the approaches taken in different jurisdictions, the court ruled "that a breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative." *Id.* at *7. In short, "the implied covenant of good faith does *not* allow for a claim separate and distinct from a breach of contract claim." *Id.*

This conclusion is especially true when, as here, the allegations underlying the breach of contract claim overlap with the allegations underlying the common law bad faith claim. (*See* Doc. No. 1-3 at 14 (alleging that Travelers acted in bad faith "by failing to pay the $300,000.00 limit of underinsured motorist coverage").) *See McDonough v. State Farm Fire & Cas. Co.*, 365 F. Supp. 3d 552, 558 (E.D. Pa. 2019) (finding that plaintiff's common law bad faith claim was subsumed into his breach of contract claim because both claims stemmed "from State Farm's refusal to pay [plaintiff] the full amount of his policy coverage"); *Meyer v. Cuna Mut. Group,* 2007 WL 2907276 at *15 (W.D. Pa. Sept. 28, 2007) (holding that where the conduct forming the basis of the plaintiff's breach of duty of good faith and fair dealing claim is the same conduct forming the basis for the breach of contract claim, the claims merge and there is no separate cause of action for breach of duty of good faith and fair dealing). Thus, Ike's common law bad faith claim fails because it is subsumed by his express breach of contract claim, which is barred by accord and satisfaction. *See Belotti v. State Farm Fire & Cas. Co.*, No. 3:22-CV-1284, 2025 WL 904697, at *5 (M.D. Pa. Mar. 25, 2025) (dismissing plaintiffs' claim of breach of implied covenant of good faith and fair dealing because "this claim mirrors the plaintiffs' breach of contract claim," which the Court had "previously dismissed"); *Durkin v. State Farm Mut. Auto.*

*Ins. Co.*, No. 4:23-CV-00721, 2025 WL 462081, at *5 (M.D. Pa. Feb. 11, 2025) (dismissing Plaintiff's common law bad faith claim because her breach of contract claim was dismissed).

\* \* \*

Given *JHE* and the clear weight of authority, the Court declines to break new ground under Pennsylvania law. The Court finds that Ike's express breach of contract claim is barred by accord and satisfaction and rules that he cannot bring a standalone common law bad faith claim. Thus, the Court grants Travelers' motion on Count I and dismisses this Count with prejudice.

## IV.     Conclusion

For the reasons above, the Court grants Travelers' motion for judgment on the pleadings, dismisses Ike's claims, and denies Ike's motion to compel as moot. An appropriate order follows.