**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HOWARD IKE**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-4498-KSM** |
| **TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**, | |
| Defendant. | |

**MEMORANDUM**

**Marston, J.**                                    **September 4, 2025**

      Insurers cannot elevate their own interests above those of their insured.  Here, Plaintiff Howard Ike claims that Defendant Travelers Property Casualty Company of America ("Travelers") put its financial interests before his own.  In his Amended Complaint, Ike brings a single claim against Travelers for violating Pennsylvania's bad faith insurance statute.  (Doc. No. 36.)  The crux of Ike's statutory bad faith claim is that Travelers wrongfully defended against his underinsured motorist ("UIM") claim on the ground that he did not suffer shoulder injuries from a car accident in 2016 that impaired his ability to work.  (*Id.*)  Ike alleges that in a parallel workers' compensation proceeding, Travelers obtained an expert medical report that confirmed a causal relationship between his shoulder injuries and the car accident.  (*Id.*)  Even though Travelers had this report and later admitted causation in the workers' compensation case, Travelers obtained a second expert medical report in defense of Ike's UIM claim, contested this identical issue of causation based on the second report, and refused to pay the full value of his claim.  (*Id.*)

Travelers now moves to dismiss Ike's Amended Complaint. (Doc. No. 37.) Ike opposes Travelers' motion. (Doc. Nos. 38, 40.) For the reasons below, the Court denies Travelers' motion to dismiss.

## I.    Background

### A.    Factual Allegations[1]

The Court recounts only the necessary allegations in Ike's Amended Complaint to resolve the present motion to dismiss.[2] In the fall of 2016, Ike was involved in a motor vehicle accident while driving his employer's van. (Doc. No. 36 at 3.) As a result of the accident, Ike alleges that he suffered serious and permanent injuries, including injuries to his left shoulder that impaired his ability to work. (*Id.* at 4.)

Ike sought three types of relief for his injuries. First, he filed for workers' compensation. (*Id.* at 6.) Second, he brought a tort claim against the driver who was responsible for the accident. (*Id.* at 8–9.) And third, he sought underinsured motorist ("UIM") benefits from his employer's automobile insurance provider. (*Id.* at 9.) Ike's employer had both workers' compensation insurance and automobile insurance through Travelers. (*Id.* at 4–5.) The Court discusses the workers' compensation claim and the UIM claim in turn.[3]

*The workers' compensation claim.* Because he was on the job when the accident happened, Ike filed a claim for workers' compensation. (*Id.* at 6.) While evaluating Ike's claim,

---

[1] These allegations come from Ike's Amended Complaint. (Doc. No. 36.) The Court assumes their truth for purposes of this motion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[2] For a more detailed discussion of the underlying factual allegations in this case, see *Ike v. Travelers Property Casualty Co. of America*, No. CV 23-4498-KSM, 2025 WL 1116527 (E.D. Pa. Apr. 15, 2025).

[3] Ike's tort claim against the at-fault driver and the at-fault driver's insurer, State Farm, was resolved with Travelers' consent for $97,000. (Doc. No. 36 at 8–9.)

Travelers obtained an independent medical examination of Ike. (*Id.*) Dr. Robert Grob examined Ike on August 24, 2018, and he determined that "as a result of his motor vehicle accident," Ike "sustained a cervical and left shoulder sprain as well as a possible tear of his labrum." (Doc. No. 36-3 at 6.) Dr. Grob further commented that Ike's "mechanism of injury does support a strain and possible tear of his labrum." (*Id.* at 7.)

Ike alleges that Dr. Grob's report was not provided to his lawyer handling his workers' compensation claim "until early 2022."[4] (Doc. No. 36 at 6.) After Ike's counsel received this report, he filed a petition in the workers' compensation forum to expand the description of Ike's injuries from the 2016 car accident to "include a tear of the labrum and impingement syndrome of the left shoulder." (*Id.* at 7.) In July 2022, a workers' compensation judge approved Travelers and Ike's "Stipulation of Facts," which expanded the description of Ike's injuries from the car accident "to include a left shoulder labral tear and aggravation of a pre-existing left shoulder impingement syndrome." (Doc. No. 36-4 at 5–7.) The approval of this stipulation "constituted a final disposition" of his petition and workers' compensation claim. (*Id.* at 5; Doc. No. 36 at 8.)

*The UIM claim.* On June 15, 2017, Ike's counsel notified Travelers that Ike would be seeking UIM benefits through his employer's automobile insurance policy. (*Id.* at 9.) Ike later "present[ed]" his UIM claim to Travelers and sent proof that he had received $72,500 in workers' compensation from Travelers based on the car accident. (*Id.*) Ike also requested a copy of his employer's automobile insurance policy, but Travelers provided him with only the

---

[4] The Court confirmed with the parties at the oral argument on September 2, 2025, that the same law firm represented Ike for both his workers' compensation claim and his UIM claim.

declarations page.  (*Id.*)  The declarations page confirmed that his employer's insurance policy offered up to $300,000 in UIM coverage.  (*Id.*)

On November 21, 2019, Ike sent additional records to Travelers' insurance adjuster, including medical records and proof that he had received over $52,500 in workers' compensation for medical expenses alone.  (*Id.* at 10.)  He also attached a "Vocational Earning Power Assessment Report", which showed his earnings had decreased by more than $350,000 due to his injuries from the car accident.  (*Id.*)  The following month, Travelers' UIM adjuster confirmed receipt of Ike's claim and requested hard copies of Ike's medical records from the past five years.  (*Id.*)  Ike provided the adjuster with the requested documents, and Travelers made an offer of $75,000 in February 2020.  (*Id.* at 10–11.)  In that offer, the adjuster indicated that she needed more information to evaluate Ike's lost wages and asked for a release of his employment records.  (*Id.* at 11.)  Ike executed the additional release, but the adjuster still had difficulty obtaining his employment records.  (*Id.*)  Ike told her that his employer was insured by Travelers, so Travelers should have already had his employment records.  (*Id.*)

On April 13, 2020, a new adjuster took over Ike's UIM claim.[5]  (*Id.* at 12.)  This adjuster requested authorization to obtain employment records from Ike's post-2016 employers, which Ike promptly provided.  (*Id.*)  For several months, there was no movement on Ike's UIM claim. (*Id.* at 12–13.)  Then, on October 5, 2020, the new adjuster extended the same $75,000 offer as the previous adjuster.  (*Id.* at 13.)  Two weeks later, Ike reduced his settlement demand from $300,000 to $275,000 and requested copies of the records that Travelers had obtained, but

---

[5] Ike's Amended Complaint lists "April 13, 2025" as the date when Ike's counsel was advised that a new adjuster was handling his claim.  (Doc. No. 36 at 12.)  This appears to be a scrivener's error as his original Complaint had listed this date as "April 13, 2020," and the Amended Complaint alleges that the new insurance adjuster extended settlement offers in the fall of 2020.  (*Id.* at 12–13.)  *See Ike*, 2025 WL 1116527, at *2.

Travelers failed to produce these records. (*Id.*) Even after Ike reduced his demand, however, the Travelers adjuster reiterated the $75,000 offer and advised, for the first time, that Travelers would arbitrate this dispute. (*Id.*) Ike declined the settlement offer and chose to proceed to arbitration. (*Id.* at 14.)

On November 9, 2020, Ike's counsel appointed an arbitrator, but he alleges that "Travelers never appointed an arbitrator" to adjudicate his UIM claim.[6] (*Id.*) Later that month, an "attorney employee of Travelers" from the office of William J. Ferren & Associates informed Ike's counsel that he would be handling "the defense of the [UIM] claim." (*Id.*) In January 2021, Travelers' counsel subpoenaed records relating to Ike's UIM claim, and in August 2021, Travelers' counsel took Ike's "Statement Under Oath." (*Id.* at 15.) Travelers' counsel then scheduled an independent medical examination of Ike with a "different orthopedist" than Dr. Grob. (*Id.* at 16.) The second independent medical examination of Ike occurred on September 29, 2021. (*Id.*) Unlike Dr. Grob, this doctor concluded that Ike's shoulder injuries "were not related" to the 2016 car accident. (*Id.*) Based on this conclusion, Travelers' vocational rehabilitation expert issued a report on January 4, 2022, finding that Ike did not suffer any lost wages or earnings due to the crash. (*Id.* at 17.)

In January 2022, Travelers' counsel advised Ike's counsel that it was defending Ike's UIM claim on the ground that Ike's shoulder injuries were not causally related to the 2016 car

---

[6] Travelers disputes this allegation in its motion to dismiss and attaches exhibits to its motion, which purport to show that Travelers did in fact appoint an arbitrator. (Doc. No. 37-5 at 2.) Because Ike's claim is not based on these emails, however, the Court cannot consider these exhibits without converting Travelers' motion to dismiss into a motion for summary judgment. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). But the Court reminds Ike's counsel that he cannot dance around the truth in his complaint, and "[b]y presenting to the court a pleading," he certifies to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).

accident. (*Id.*) The resolution of Ike's UIM claim again stalled, but the parties reopened settlement negotiations in May 2022. (*Id.* at 18.) At that time, Travelers' counsel extended a $100,000 settlement offer. (*Id.*) After several back-and-forth discussions, Ike's UIM claim was settled for $187,500 in August 2022. (*Id.* at 19.) Ike alleges that he could not wait any longer for his claim to be resolved because he was in "dire financial" straits. (*Id.*)

### B.    Procedural History

On June 7, 2023, Ike initiated suit against Travelers by filing a praecipe for a writ of summons in the Philadelphia County Court of Common Pleas.[7] (Doc. No. 1-1 at 2.) Ike filed his Complaint on October 16, 2023, and Travelers timely removed the case to federal court based on diversity jurisdiction. (Doc. No. 1 at 1.) Ike's original Complaint had two counts: Count I was a breach of contract claim and Count II was a statutory bad faith claim. (Doc. No. 1-3 at 12–20.) Within Count I, Ike alleged that Travelers had breached both the express terms of the insurance contract as well as its duty of good faith and fair dealing. (*Id.* at 12–17.)

In October 2024, Ike filed a motion to compel, requesting "that Travelers be compelled to produce all information and documentation from both the workers' compensation file and the UIM file with the exception of any information or documentation protected by the attorney-client privilege." (Doc. No. 22 at 2.) In response, Travelers filed a motion for judgment on the pleadings and an opposition to Ike's motion to compel. (Doc. No. 23-1.)

After hearing oral argument on the motions in April 2025, the Court granted Travelers' motion for judgment on the pleadings and denied Ike's motion to compel as moot. (Doc. No.

---

[7] In the previous Memorandum, the Court wrote that "[o]n October 16, 2023, Ike sued Travelers in Pennsylvania state court." *Ike*, 2025 WL 1116527, at *2. This was incorrect. Instead, Ike filed a praecipe for a writ of summons on June 7, 2023, and he filed his Complaint on October 16, 2023. (Doc. No. 1 at 1.)

35.)  The Court dismissed Count I of Ike's Complaint with prejudice, finding "that Ike's express breach of contract claim is barred by accord and satisfaction" and ruling "that he cannot bring a standalone common law bad faith claim."  *Ike*, 2025 WL 1116527, at *8.  The Court also dismissed Ike's statutory bad faith claim (Count II) as time-barred because his claim was premised on Travelers' refusal to promptly pay the full policy limit, which occurred more than two years before he filed suit.  *Id.* at *4.  Yet the Court dismissed this claim without prejudice because "Travelers' conduct in the context of arbitration could give rise to a claim for bad faith unrelated to the initial refusal that could . . . survive Travelers' statute of limitation argument."  *Id.* at *6.

On May 2, 2025, Ike filed an Amended Complaint.  (Doc. No. 36.)  Travelers filed a motion to dismiss two weeks later, and Ike filed a response in opposition.  (Doc. Nos. 37–40.)  The Court held oral argument on Travelers' motion to dismiss on September 2, 2025.  (Doc. No. 43.)  For the reasons below, the Court denies Travelers' motion.

## II.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410,

1426 (3d Cir. 1997). "However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up). The court may also "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (internal quotations omitted).

## III.    Discussion

In his Amended Complaint, Ike sues Travelers for violating Pennsylvania's bad faith insurance statute, 42 Pa. Cons. Stat. Ann. § 8371.[8] (Doc. No. 36.) Travelers at first moved to dismiss Ike's Amended Complaint on three grounds. (Doc. No. 37.) First, Travelers argued that Ike's bad faith claim based on its handling of his UIM claim was time-barred. (Doc. No. 37-2 at 10–11.) Second, it contended that Ike's bad faith claim based on its alleged failure to arbitrate was "baseless" and time-barred. (*Id.* at 11–12.) And third, Travelers asserted that Ike's bad faith claim based on its alleged failure to disclose Dr. Grob's report is not plausible or actionable as bad faith. (*Id.* at 12–14.)

In response, Ike clarified the scope of his statutory bad faith claim. He explained that his claim has two bases: (1) Travelers failed "to fully and fairly investigate, evaluate, and negotiate a settlement" of his UIM claim; and (2) while possessing an expert medical opinion that confirmed the causal relation of Ike's shoulder injuries to the accident, Travelers (a) sought out and obtained a separate medical opinion to challenge the causal relationship, (b) "actively

---

[8] Neither party disputes that Pennsylvania law applies here. When a district court sits in diversity, it applies the choice-of-law rules of the state in which the district court sits. *See St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 n.3 (3d Cir.1991) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). "Under Pennsylvania's choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was contracted and delivered." *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 518 (W.D. Pa. 2012).

concealed that initial expert report from Ike," and (c) defended against his UIM claim on the basis of the second opinion, despite conceding causation in the workers' compensation case. (Doc. No. 38-1 at 5–6.)  With this clarification, Travelers now contends that Ike's statutory bad faith claim is time-barred and fails to set forth any actionable conduct by Travelers.  (Doc. No. 39 at 4–11.)

### A.    Ike's Revised Statutory Bad Faith Claim is Timely

In our prior Memorandum, the Court found that Ike's statutory bad faith claim accrued on October 21, 2020.  *See Ike*, 2025 WL 1116527, at *3–4.  As pleaded in his original Complaint, the Court understood Ike's statutory bad faith claim to be "premised on Travelers' failure to promptly pay the full policy limit."  *Id.* at *4.  Under this framing, the Court found that Ike's statutory bad faith claim accrued when "Travelers . . .  unequivocally refus[ed] to pay the full policy limits" on October 21, 2020.  *Id.*  Because Ike waited more than two years from that date to bring suit, the Court ruled that Ike's statutory bad faith claim was time-barred.  *Id.*

Yet the Court dismissed Ike's statutory bad faith claim without prejudice.  The Court explained:

> To be sure, the Court finds that Ike's statutory bad faith claim based on the initial refusal to provide the full extent of the coverage is barred by the statute of limitation.  Yet based on the allegations in the Complaint, Travelers' conduct in the context of arbitration could give rise to a claim for bad faith unrelated to the initial refusal that could . . . survive Travelers' statute of limitation argument.  So Ike will be given leave to amend his complaint and bring a statutory bad faith claim based on Travelers' conduct in the two years before he filed suit.  This statutory bad faith claim cannot rely on Travelers' conduct during the claims-handling process.

*Id.* at *6 (internal quotations and footnote omitted).  In other words, although the Court ruled that Ike's statutory bad faith claim was untimely as pleaded, the Court found that there were

allegations in Ike's Complaint that could support a timely statutory bad faith claim.[9]  Based on this observation, the Court gave Ike leave to amend his complaint and bring a statutory bad faith claim based on Travelers' conduct "in the context of arbitration."  *Id.*

After the Court issued our Memorandum, Ike filed his Amended Complaint and brought a revised statutory bad faith claim.  In his briefing, Ike confirms that the crux of his claim is that in the context of arbitration, Travelers (a) concealed Dr. Grob's expert report that confirmed a causal relationship between his shoulder injuries and the 2016 car accident, (b) ignored this expert report and obtained a second expert report in order to contest causation in defense of the UIM claim, (c) wrongfully defended his UIM claim based on the second expert report, and (d) took materially inconsistent positions in his workers' compensation case and in defense of the UIM claim.  (Doc. No. 40 at 4.)

Travelers once again argues that Ike's statutory bad faith claim is time-barred because he re-alleges that Travelers took "inconsistent positions with respect to" his injuries in the workers' compensation proceeding and in defense against the UIM claim.  (Doc. No. 37-2 at 10; Doc. No. 39 at 5.)  Travelers contends that this conduct amounts to a continual refusal to provide coverage, which relates back to Travelers' initial refusal to pay additional benefits on October 21, 2020. (*Id.*)  Ike counters that these acts of bad faith are distinct from Travelers' initial refusal to pay additional benefits.  (Doc. No. 38-1 at 12 n.5.)  The Court agrees with Ike.

Because the parties dispute the scope of the Court's prior Memorandum, the Court provides the following clarification of our prior ruling.  Ike's statutory bad faith claim premised on Travelers' conduct before October 21, 2020, is time-barred.  On that date, Travelers refused

---

[9] In a footnote, the Court "express[ed] no opinion as to whether Travelers' conduct in the context of arbitration does in fact give rise to a statutory bad faith claim."  *Ike*, 2025 WL 1116527, at *6 n.3.

to pay the full policy limits and advised that it would arbitrate Ike's UIM claim. *Ike*, 2025 WL 1116527, at *4. After Ike elected to arbitrate his claim, Travelers' attorney took over the defense of his UIM claim. *Id.* at *2. The Court thus found that the claims-handling process ended once Travelers' adjuster refused to increase the $75,000 offer and Ike demanded arbitration, and Travelers' subsequent conduct occurred in the context of arbitration. *Id.* at *6. Based on these allegations, the Court ruled that "Ike's statutory claim for bad faith—premised on Travelers' failure to promptly pay the full policy limit" accrued on October 21, 2020.[10] *Id.* at *4. Likewise, the "web of allegations" relating to Travelers' conduct during the claims-handling process was also untimely because any bad faith claims on these grounds accrued when Travelers refused to pay additional benefits at the end of the claims-handling process. *Id.*

Yet it does not follow from these rulings that Ike's allegations relating to Travelers' conduct in the context of arbitration are also time-barred. A statutory bad faith claim under 42 Pa. Cons. Stat. Ann. § 8371 is "subject to [a] two-year statute of limitations." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). Courts have ruled that the statute of limitations for a statutory bad faith claim starts to run when an insurer "initially refuses payment" or gives "clear notice of its denial of coverage." *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1035 (Pa. Super. Ct. 1999); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005). Though "[a]cts of

---

[10] Ike disputes that there is a difference between the handling of a claim and the defense of a claim, and he asserts that the Court's prior Memorandum "ignore[s] the realities of the litigation process." (Doc. No. 40 at 8–9.) Yet the allegations in Ike's Complaint supported the distinction between the handling of a claim and the defense of a claim. Ike had alleged that on October 21, 2020, Travelers adjuster "indicated that the $75,000 offer *would not be increased* but that Travelers would arbitrate." (Doc. No. 1-3 at 8 (emphasis added).) After that point, Travelers' counsel took over Ike's UIM claim, subpoenaed Ike's records, took his "Statement Under Oath," scheduled his independent medical examination, and ultimately negotiated a settlement with Ike's counsel. (*Id.* at 9–10.) Given these allegations, the Court found that the claims-handling process ended on October 21, 2020, and the defense of his claim commenced once he declined Travelers' adjuster's $75,000 settlement offer and elected to proceed to arbitration.

bad faith that relate to the initial denial of coverage are not entitled to a separate statute of limitations," *Phan-Kramer v. Am. States Ins. Co.*, No. 2:23-CV-01867-JDW, 2023 WL 4867421, at *3 (E.D. Pa. July 31, 2023), "subsequent acts of bad faith beyond the initial refusal to pay and acts related to that refusal can give rise to claims that are not time barred," *Bowers v. Nationwide Ins. Co.*, No. 3:07CV1134, 2008 WL 189572, at *3 (M.D. Pa. Jan. 18, 2008).

Here, Ike alleges that Travelers engaged in acts of bad faith that are distinct from its initial refusal to pay the full policy limits. For one, Ike alleges that Travelers acted in bad faith in preparing for arbitration by obtaining a second expert report, disputing causation on the basis of the second expert report, and conceding causation in the workers' compensation proceeding while continuing to dispute causation in defense of his UIM claim. (Doc. No. 36 at 15–19.) None of these acts can be fairly characterized as "continuing refusals to provide coverage"; they are instead separate and distinct acts of bad faith. *Adamski*, 738 A.2d at 1042.

For another, the Court finds it significant that Ike's statutory bad faith claim relies on Travelers' conduct in the context of arbitration. Just as an insured's "actions at [an] arbitration hearing" can "give rise to a claim for bad faith unrelated to" its refusal to pay the entire claim, so too can Travelers' conduct in preparing for arbitration give rise to a bad faith claim "independent of [its] refusal to pay the entire claim." *Bowers*, 2008 WL 189572, at *4. Plus, earlier in this case, Travelers' counsel argued that the claims-handling process ended once Ike demanded arbitration, and after that point, it was "an adversarial proceeding." (Apr. 4, 2025 Hr'g Tr. at 3:15–4:6.) Because Ike alleges that Travelers committed distinct acts of bad faith in a different type of proceeding than the initial claims-handling process, the Court finds that these acts do not relate back to Travelers' initial refusal to pay additional benefits in October 2020. The Court

thus finds that Ike's statutory bad faith claim is timely because these alleged acts of bad faith occurred within two years of him filing suit.[11]

*  *  *

In short, Ike's Amended Complaint alleges that Travelers "committed . . . new act[s] of bad faith" in preparing for arbitration by obtaining a second expert report, disputing causation based on this report, and by continuing to dispute causation in the UIM proceeding while conceding causation in the workers' compensation proceeding.  *Id.*  Because these acts are distinct from Travelers' initial refusal to pay additional benefits under the policy and occurred within two years of when Ike filed suit, the Court finds that Ike's revised statutory bad faith claim is timely.

### B.        Ike Pleads a Plausible Statutory Bad Faith Claim

Having found that Ike's statutory bad faith claim is timely, the Court turns to Travelers' argument that it did not act in bad faith by obtaining a second expert report or by disputing causation in defense of Ike's UIM claim.  (Doc. No. 39 at 6–8.)  Ike counters that he pleads a plausible statutory bad faith claim because Travelers concealed Dr. Grob's expert report, ignored this report and obtained a second expert report, disputed causation on the basis of the second expert report, and took inconsistent positions in the workers' compensation proceeding and in defense of his UIM claim.  (Doc. No. 38-1 at 12–19.)  The Court finds that Ike has stated a plausible statutory bad faith claim.

---

[11] Ike filed suit on June 7, 2023.  (Doc. No. 1-1 at 2.)  He alleges that Travelers acted in bad faith by obtaining a second expert report in September 2021, disputing causation based on the second expert report in January 2022, and continuing to dispute causation in defense of his UIM claim while admitting causation in the workers' compensation forum in July 2022.  (Doc. No. 36 at 8, 16, 17.)  Because these alleged acts occurred within two years of when he filed suit, the Court finds that Ike's revised statutory bad faith claim is timely.

Pennsylvania's bad faith insurance statute does not define the term "bad faith." *Smith v. State Farm Fire & Cas. Co.*, No. CV 15-670, 2015 WL 7568326, at *3 (E.D. Pa. Nov. 25, 2015) (quoting 42 Pa. Cons. Stat. Ann. § 8371). But "Pennsylvania courts have held that the term encompasses 'frivolous or unfounded refusal to pay the proceeds of a policy [where] such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will.'" *Id.* (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)). To prevail on a statutory bad faith claim, a plaintiff must show by clear and convincing evidence "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). And "[t]o withstand a motion to dismiss, '[a] plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements.'" *Houtz v. State Farm Fire & Cas. Co.*, 735 F. Supp. 3d 535, 539 (E.D. Pa. 2024) (quoting *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017)). "A plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." *Toner*, 262 F. Supp. 3d at 208.

Here, Ike makes specific factual allegations that Travelers acted in bad faith while defending his UIM claim. In his Amended Complaint, Ike alleges that Travelers obtained an independent medical report in his workers' compensation proceeding, which found that there was a causal relationship between the car accident and his shoulder injuries. (Doc. No. 36 at 6.) Ike alleges that Travelers concealed this report for years and did not disclose it to Ike's counsel in either the workers' compensation proceeding or in connection with his UIM claim until early 2022. (*Id.*) After the report was disclosed to Ike's counsel, Travelers and Ike entered a

stipulation that was approved by a workers' compensation judge in July 2022, which expanded the scope of his injuries from the car accident to include injuries to his left shoulder. (*Id.* at 6–7.) Though Travelers possessed this expert report that confirmed causation between the car accident and his shoulder injuries, Ike alleges that Travelers nevertheless decided to dispute causation in the defense of his UIM claim where its financial exposure was much greater. (*Id.* at 16.) In September 2021, while preparing for arbitration, Travelers retained a different medical expert who examined Ike and concluded that Ike's shoulder injuries were not caused by the car accident. (*Id.*) Based on this new report, Travelers' vocational rehabilitation expert opined that Ike had sustained no loss of earnings from the car accident. (*Id.* at 16–17.) And Travelers continued to defend Ike's UIM claim on this ground even after it had filed a stipulation in the workers' compensation forum, admitting that there was a causal relationship between Ike's shoulder injuries and the car accident.[12] (*Id.* at 23–24.)

These specific, non-conclusory allegations state a plausible statutory bad faith claim against Travelers. Assuming the allegations in Ike's Amended Complaint are true, as the Court must at this stage, it is plausible that Travelers did not have a reasonable basis to defend Ike's UIM claim on the ground that Ike's shoulder injuries were not causally related to his car accident. Based on these allegations, it is also plausible that Travelers "recklessly disregarded" its lack of reasonable basis by concealing Dr. Grob's report, seeking out a second expert report in September 2021, and taking inconsistent positions in the workers' compensation proceeding

---

[12] The Court notes that Travelers and Ike's "Stipulation of Facts" in the workers' compensation proceeding was approved by a workers' compensation judge in July 2022. (Doc. No. 36 at 7–8.) However, Ike's UIM claim was not settled until the following month. (*Id.* at 19.)

(where it admitted causation) and in defense of the UIM claim (where it denied causation).[13]

*Rancosky*, 170 A.3d at 377. In other words, Ike's Amended Complaint alleges that Travelers'

actions in preparing for arbitration lacked a reasonable basis and were purposefully taken to try

to limit Ike's recovery of UIM benefits. *See Buccine v. New Jersey Manufacturers Ins. Co.*, No.

CV 3:09-2492, 2010 WL 11672689, at *6 (M.D. Pa. Sept. 30, 2010) (finding that plaintiffs had

"sufficiently alleged the elements of a bad faith claim, namely that defendant's actions at the

arbitration with respect to the handling of plaintiffs' PIP benefits lacked a reasonable basis and

were purposefully and intentionally taken to try to reduce the plaintiffs' UIM arbitration award").

Because Ike's Amended Complaint describes "who, what, where, when, and how the alleged bad

faith conduct occurred," the Court finds that he pleads a plausible statutory bad faith claim.

*Mattia v. Allstate Ins. Co.*, No. CIV.A. 14-2099, 2014 WL 2880302, at *4 (E.D. Pa. June 24,

2014) (internal quotations omitted).

 Travelers resists this conclusion on several grounds, but none persuades. First, Travelers

contends that it did not act in bad faith by obtaining a medical report in defense of the UIM claim

or by defending Ike's UIM claim on the basis of that medical report. (Doc. No. 39 at 6.) To be

sure, courts have found that insurers do not act in bad faith by refusing "to accept the

determinations of the insured's treating physicians at face value." *Carr v. Travelers Home &*

*Marine Ins. Co.*, 700 F. Supp. 3d 288, 298 (E.D. Pa. 2023). Nor is it bad faith for insurers to rely

more on their own experts than the insured's experts. *Id.* But Ike's statutory bad faith claim

does not allege that Travelers acted in bad faith simply by refusing to credit his expert's medical

---

[13] Because this is a motion to dismiss, and not a motion for summary judgment, the Court finds
that it "would be premature . . . to hold that [Ike] cannot provide clear and convincing evidence that
[Travelers] acted in bad faith." *Scarpato v. Allstate Ins. Co.*, No. CIV.A.05-05520, 2007 WL 172341, at
*5 (E.D. Pa. Jan. 23, 2007).

report or by favoring its expert report over the expert report that Ike had submitted. Instead, Ike alleges that Travelers ignored its own expert opinion from a parallel workers' compensation proceeding, which found a causal relationship between Ike's shoulder injuries and the car accident. (Doc. No. 36 at 22–24.) Indeed, Ike alleges that Travelers chose not to rely on Dr. Grob's expert report and instead sought a second medical expert report to be able to contest causation in defense of his UIM claim (where Travelers' financial exposure was much greater). (*Id.*) These allegations, along with the allegations that Travelers took inconsistent positions in defense of the UIM claim and in the workers' compensation proceedings, are sufficient to state a plausible statutory bad faith claim.

Second, and relatedly, Travelers argues that it was free to take inconsistent positions in the workers' compensation proceeding and in defense of the UIM claim. (Doc. No. 39 at 6–8.) In support of its position, Travelers relies on *Pantelis v. Erie Insurance Exchange*, 890 A.2d 1063 (Pa. Super. Ct. 2006). In *Pantelis*, the court rejected the argument that an insurance company could not "dispute causation in the underinsured motorist proceeding after it paid first party benefits." *Id.* at 1065. The court held that an "insurer's payment of first party benefits does not, *without more*, constitute a binding admission of causation under either the statute or case law." *Id.* at 1068 (emphasis added). And because there was no evidence that the insurance company "admitted causation when it paid first party benefits," the court ruled that the insurance company did not act in bad faith by paying first party benefits while disputing causation in the UIM proceeding. *Id.*

*Pantelis* is distinguishable. Unlike in *Pantelis*, Ike alleges that Travelers not only paid him workers' compensation, but it also *admitted* causation in the workers' compensation forum. (Doc. No. 36 at 7–8.) After Ike's counsel received Dr. Grob's report in early 2022, he filed a

petition in the workers' compensation forum to expand the description of Ike's injuries to

"include a tear of the labrum and impingement syndrome of the left shoulder." (*Id.* at 7.) This

petition was resolved in July 2022 when a workers' compensation judge approved a stipulation

filed by Travelers and Ike to expand the description of his injury "to include a left shoulder labral

tear and aggravation of a pre-existing left shoulder impingement syndrome." (Doc. No. 36-4 at

6.) The Court thus finds that *Pantelis* does not control here because Ike alleges that Travelers

did more than just pay benefits; he alleges that Travelers *admitted* causation in the workers'

compensation proceeding while disputing causation in defense of Ike's UIM claim. (Doc. No.

36 at 23.) And at this early stage, the Court finds that these allegations, in conjunction with the

others related to Travelers' defense of his UIM claim, state a plausible statutory bad faith claim

against Travelers.

And last, Travelers contends that it is not responsible for the actions of its attorney in

preparing for arbitration. The Court notes that there is a split of authority on this issue.

*Compare Ravindran v. Harleysville Ins. Co.*, 65 Pa. D. & C. 4th 338, 351–52 (C.P. Phila. 2002)

("Generally, an attorney acts as an independent contractor when hired by the insurance company

and, therefore, any conduct by the attorney *cannot be imputed* to the client."), *with Lublin v. Am.

Fin. Grp., Inc.*, 960 F. Supp. 2d 534, 540 (E.D. Pa. 2013) ("For purposes of bad faith litigation,

an insurance company is chargeable with the actions of its attorney." (internal quotations

omitted)). At this early stage, the Court declines to dismiss Ike's claim because Travelers'

counsel engaged in the acts of bad faith. Pennsylvania's bad faith insurance statute "was

designed to remedy all instances of bad faith conduct by an insurer, whether occurring before,

during or after litigation." *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa.

Super. Ct. 1999); *Thomer v. Allstate Ins. Co.*, 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011) (same).

And in Ike's Amended Complaint, he alleges that the "employee attorneys of Traveler" and the "employees of the Claims Department of Travelers . . . worked together to deprive Ike of benefits he was otherwise due from Travelers because of injuries sustained in the September 22, 2016 collision." (Doc. No. 36 at 5.) The Court thus finds that Travelers could be responsible for the conduct of its attorneys in the defense of Ike's UIM claim. *Cf. Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 234 (3d Cir. 1997) ("State Farm acknowledged at oral argument that it is chargeable with the actions of its attorney.").[14]

* * *

In short, the Court finds that Ike pleads a plausible statutory bad faith claim. Ike's statutory bad faith claim does not merely "recite the elements of a bad faith claim without any factual support." *Higman v. State Farm Mut. Auto. Ins. Cos.*, No. 2:18-CV-00662, 2018 WL 5255221, at *6 (W.D. Pa. Oct. 22, 2018). Instead, he makes specific factual allegations that plausibly suggest that Travelers did not have a reasonable basis to defend his UIM claim on causation grounds, and it recklessly disregarded its lack of reasonable basis to defend his claim for lack of causation by ignoring an expert report it had obtained in a parallel proceeding, obtaining a second expert report to dispute causation, and taking inconsistent positions about the cause of his shoulder injuries. Put otherwise, Ike alleges that Travelers violated its "duty to act with the utmost good faith towards its insured," and instead elevated its interests above his own. *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 416 (Pa. Super. Ct. 2004). The Court thus finds that he pleads a plausible statutory bad faith claim.

---

[14] Travelers also argues that it is not plausible that it concealed Dr. Grob's report. (Doc. No. 39 at 8.) According to the allegations in Ike's Amended Complaint, however, Travelers did not disclose Dr. Grob's report until early 2022. (Doc. No. 36 at 18.) Though Travelers is free to challenge the factual basis for this allegation at the summary judgment stage, the Court must, at this stage, "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016) (internal quotations omitted).

**IV.     Conclusion**

For the reasons above, the Court denies Travelers' motion to dismiss.  An appropriate order follows.